OPINION
Appellant, Orville Gregory, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of his minor children, Edward and Felischa Gregory, to the Butler County Children Services Board ("BCCSB"). We affirm the decision of the trial court.
Appellant is the biological father of Edward ("Eddie") and Felischa Gregory. This case began in August 1995, when BCCSB received a referral alleging appellant physically abused Edward. According to the referral, appellant took his son to a bar where appellant became so intoxicated that he twice "knocked Eddie off a bar stool." Eddie, who was not quite six years old at the time, was found wandering in the street in front of the bar, while appellant was unaware of his son's whereabouts. Appellant was arrested and charged with disorderly conduct and child endangering. He was subsequently convicted of the charges on September 6, 1995 in Hamilton Municipal Court.
Between September 1995 and January 1996, BCCSB received five additional referrals alleging that appellant neglected and emotionally and physically abused his children. On January 24, 1996, appellant was arrested and charged with domestic violence after assaulting his mother. Eddie and Felischa stayed with appellant's mother while he was in the Butler County Jail. BCCSB conducted a home visit and determined that appellant's mother was unable to adequately care for the children due to her fragile health.
On January 31, 1996, BCCSB filed a complaint alleging that the children were neglected, abused and dependent. The trial court granted BCCSB temporary custody of Eddie and Felischa. On May 1, 1996, appellant agreed to a finding of dependency, and BCCSB dropped the charges of neglect and abuse.
The trial court adopted a case plan presented by BCCSB. The case plan required appellant to complete parenting classes, substance abuse treatment and a drug and alcohol assessment, as well as participate in supervised visitation with the children. The trial court conducted periodic review hearings and each time BCCSB was permitted to retain temporary custody of the children.
BCCSB filed a motion for permanent custody of Edward and Felischa Gregory on December 8, 1997. The trial court conducted a hearing on December 4, 1998 and granted permanent custody to BCCSB.[1] From this decision, appellant filed a timely notice of appeal and presents one assignment of error for our review.
In his sole assignment of error, appellant argues that the decision of the trial court was against the manifest weight of the evidence. Appellant asserts that the trial court erred because it did not find that appellant's parental rights should be terminated by clear and convincing evidence. Specifically, appellant maintains that the trial court erred by concluding that the children cannot be placed with appellant within a reasonable time and that the children should not be placed with appellant.
We begin with the constitutional principle that natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. "Clear and convincing evidence" requires that the proof "produced in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Id. at 479. When deciding a permanent custody case, the trial court is required to make specific statutory findings; the reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In re William S.
(1996), 75 Ohio St.3d 95.
When a state agency moves for permanent custody, the trial court is required to hold a hearing to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In order to grant permanent custody to a state agency, the trial court must also find by clear and convincing evidence that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
R.C. 2151.414(B)(1).
When determining whether it would be in the best interest of the child to grant permanent custody of the child to an agency, a juvenile court should consider all relevant factors, which include but are not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
In this case, the trial court found by clear and convincing evidence that it would be in the best interest of Eddie and Felischa to award permanent custody to BCCSB. The trial court found most of the factors listed in R.C. 2151.414(D) applicable to one or both of the children. The trial court noted that the children have been in foster care continuously since January 31, 1996. No other suitable relatives are available for placement.
Evidence presented at the hearing indicated that the children's biological mother has only seen them three times since BCCSB acquired temporary custody over them in 1996. Contrary to the mother, appellant has interacted with Eddie and Felicia. However, Dr. William Walters, clinical psychologist at the Children's Diagnostic Center, described an observed visitation between appellant and the children as one of the worst interactions he ever observed. Dr. Walters observed that appellant failed to supervise the children, was inattentive to their needs, and engaged in aggressive play. Although Eddie looks forward to his visits with appellant, Felischa does not look forward to them and there was evidence that her behavior deteriorates after seeing appellant.
The guardian ad litem, after considering the father's interaction with children and the behavioral problems exhibited by both of them, recommended granting permanent custody to BCCSB. There is also evidence that Eddie has the ability to bond with an adoptive family. Felischa's family may also be interested in adopting her.
Appellant does not specifically challenge any of the trial court's findings regarding the best interest of the children. We find that the record supports the trial court's finding that an award of permanent custody to BCCSB would be in the best interest Eddie and Felischa.
In addition to determining the child's best interest, the juvenile court must determine by clear and convincing evidence whether the child can be placed with a parent within a reasonable time. R.C. 2151.414(B)(1)(a). The court shall enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply, including the following:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
* * *
 (6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 * * * of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
* * *
 (13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
* * *
(16) Any other factor the court considers relevant.
The trial court found that Eddie and Felischa could not be placed with appellant within a reasonable period of time and also that they should not be placed with appellant. The trial court found that four of the statutory factors in R.C.2151.414(E) were applicable to appellant. The trial court was required to find that the children cannot or should not be placed with appellant if any of the factors were present. R.C.2151.414(E); see, also, In re William S. (1996), 75 Ohio St.3d 95, syllabus.
Appellant challenges the trial court's finding that he meets each of the statutory factors. In challenging the trial court's decision as against the manifest weight of the evidence, appellant asserts that this case is analogous to In re Brown (1994),98 Ohio App.3d 337. We disagree with appellant's contention.
In Brown, the trial court, in what the court of appeals styled as a "cursory judgment," granted permanent custody of a child to a county agency in a judgment entry that was not clearly supported by clear and convincing evidence. Id. at 343. In addition, the trial court made "factual conclusions" that were unsupported by the record and failed to clearly set forth the facts that supported its decision. Id. Finally, the trial court failed to designate which sections of the R.C. 2151.414 were applicable. Id
at 342.
Contrary to Brown, the trial court in this case specifically enumerated the sections of R.C. 2151.414 that are applicable to appellant. In addition, the trial court clearly set forth facts that supported its findings, and the record in the case amply supports each of the trial court's findings.
The trial court found that appellant has continuously and repeatedly failed to substantially remedy the conditions causing his children to be placed outside appellant's home. Specifically, appellant has not acquired adequate parenting skills, nor has he corrected an apparent substance abuse problem. The trial court also noted that appellant is unable to properly supervise his children, respond adequately to their needs, or provide appropriate discipline. See R.C. 2151.414(E)(1).
The trial court noted that appellant has a longstanding history of alcohol abuse and has only been able to maintain sobriety for brief periods during the pendency of this case. The trial court also expressed reservations that appellant would ever be able maintain sobriety in the future. Because of his alcohol abuse, the trial court concluded that appellant is incapable of meeting the needs of his children.[2]
In addition, the record demonstrates that appellant has numerous convictions for driving under the influence of alcohol ("DUI"). Indeed, appellant was convicted of DUI in April 1998, just eight months before the permanent custody hearing and while his children were in temporary custody. At the December 1998 hearing, appellant even testified that he often drinks alcohol to help him cope with the emotional difficulties resulting from being separated from his children. It is also clear from the record that appellant's abuse of alcohol was the key factor which led to the involvement of BCCSB with appellant's children. See R.C.2151.414(E)(1) and (2).
The trial court also found that appellant was convicted of child endangering in violation of R.C. 2919.22. The record clearly demonstrates that this conviction resulted after the incident when appellant took Eddie with him to a bar. Eddie was later discovered wandering in a street unsupervised. The trial court noted that appellant continues to be unable to provide adequate supervision and direction to his children, even after parent education classes and the continued intervention of caseworkers. See R.C. 2151.414(E)(6).
Finally, appellant has served three jail sentences since the trial court granted temporary custody of his children to BCCSB on January 31, 1996. Appellant was to begin serving his third sentence only days after the permanent custody hearing. The trial court found that appellant's incarcerations had prevented and would further prevent appellant from providing care to his children.[3] See R.C. 2151.414(E)(3).
We find that the trial court made its findings according to the statutory guidelines of R.C. 2151.414 and these findings are supported by clear and convincing evidence. Accordingly, appellant's assignment of error is overruled.
Judgment affirmed.
WALSH and VALEN, JJ., concur.
[1] Mary Gregory (a.k.a. "Mary McCoy" or "Mary Johnson"), the biological mother of the children, failed to attend all hearings in this case because she was incarcerated. She was released from prison in July 1997, but failed to maintain contact with BCCSB to arrange any visits with her children. The trial court made a finding that the children could not be placed with their mother within a reasonable time. Mary Gregory has not appealed the trial court's decision.
[2] Appellant argues unpersuasively that the trial court did not make this finding by clear and convincing evidence because the trial court stated: "It is unclear whether [appellant] would continue to maintain sobriety in the future, if indeed, he was given additional time." In light of the trial court's other findings and the ample record demonstrating appellant's chronic abuse of alcohol, we decline to conclude that the trial court's charitable language prevents its finding that appellant meets R.C.2151.414(E)(2) by clear and convincing evidence.
[3] Quite remarkably, appellant contends in his brief that his mother could care for the children while he served his jail sentence a sentence that was imposed for assaulting his mother. At the permanent custody hearing, appellant admitted that had not even discussed with his mother the possibility of caring for his children and that a criminal protection order currently prevents him from "going around" her. In addition, appellant's assertion is in direct contradiction to his testimony that he "didn't want [his] kids around [his mother]."